UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICARDO S. MAZZARINO,
    Plaintiff,

v.                                CIVIL ACTION NO. 21-11516-MPK[1]

MASSACHUSETTS STATE LOTTERY COMMISSION;
DEBORAH B. GOLDBERG, Treasurer and Receiver General; and
MICHAEL R. SWEENEY, Executive Director,
    Defendants.

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION TO DISMISS (#16).

KELLEY, U.S.M.J.

I. Introduction.

Ricardo S. Mazzarino, pro se, brings this complaint against the Massachusetts State Lottery Commission ("MSLC"), as well as Deborah B. Goldberg and Michael R. Sweeney in their official and individual capacities. (#1 at 1-2, 4.) Plaintiff alleges that defendants violated his rights to equal protection of the law and due process by refusing to allow him to participate in the Massachusetts VaxMillions Giveaway ("VaxMillions"), a lottery involving five drawings for $1,000,000, from July to August 2021. *Id.* at 3-4; *see* #1-5 (affidavit in support of complaint).[2] Plaintiff seeks

---

[1] With the parties' consent, this case was assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (##22, 23.)

[2] Plaintiff's complaint does not mention 42 U.S.C. § 1983, however, § 1983 permits claims in federal court against state actors for federal constitutional violations. Plaintiff alleges that a state agency and state officials violated his Fourteenth Amendment rights. (#1 at 3.) When interpreting a pro se complaint, "the court may intuit the correct cause of action, even if it was imperfectly pled." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

1

$5,000,000 from the MSLC, $200,000 each from Goldberg and Sweeney in their official capacities, and $200,000 each from Goldberg and Sweeney in their individual capacities. (#1 at 4.)

Defendants have moved to dismiss plaintiff's complaint. (#16.) They argue that the MSLC, as well as Goldberg and Sweeney in their official capacities, have sovereign immunity, *see* #17 at 4-5, and that plaintiff has failed to state plausible equal protection and due process claims against Goldberg and Sweeney in their individual capacities, *see id*. at 7-12. As explained below, the court agrees, and therefore ALLOWS defendants' motion to dismiss.[3]

## II. Facts.[4]

The facts are based on plaintiff's complaint, the affidavit and exhibits, and reasonable inferences drawn from them. In June 2021, the MSLC made an announcement on local television news stations that anyone who was vaccinated against COVID-19 was eligible to register for five $1,000,000 lottery drawings, from July to August 2021. (#1-5 at 1.) In the announcement, the

---

[3] In light of its ruling on these two arguments, the court does not reach defendants' other arguments, including that plaintiff has failed to state facially plausible claims for supervisory liability, *see* #17 at 6-7, or that Goldberg and Sweeney in their individual capacities have qualified immunity, *see id*. at 12-13.

[4] Under Fed. R. Civ. P. 12(b)(6), ordinarily, the court's review is limited to the complaint and documents attached or expressly incorporated, unless the court converts the proceeding to one for summary judgment under Fed. R. Civ. P. 56. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). There are "narrow exceptions" to this limitation for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claims; or for documents sufficiently referred to in the complaint." *Id*. "Official public records" in this context "appears limited, or nearly so, to documents or facts subject to judicial notice" under Fed. R. Evid. 201. *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); Fed. R. Evid. 201(c)(2) (court "must take judicial notice if a party requests it and the court is supplied with the necessary information.")

MSLC indicated that the drawings were "open to all" and identified "no restrictions of any kind." *Id*.

Following the announcement, plaintiff wrote to the MSLC asking to register for VaxMillions. (#1-5 at 1.) He provided a copy of his COVID-19 vaccination card. *Id*. A letter from plaintiff to Goldberg, dated July 26, 2021, is attached as Exhibit 1 to his complaint. *See* #1-4. Plaintiff wrote that he had previously written to Goldberg, on or about July 19, 2021, to register for VaxMillions. *Id*. at 1.[5] Plaintiff explained that he is a "Civilly Committed Resident, held at the Massachusetts Treatment Center" and a "civilian held With-in the DOC only." *Id*. Plaintiff also explained that he did not have access to an e-mail account or a phone to call and register. *Id*. Plaintiff requested confirmation that he had been registered for all of the drawings, adding that he did "not want to be disenfranchised, and equal protection, for being a Civil Resident of the Massachusetts Treatment Center." *Id*.

In response, plaintiff received a letter dated August 11, 2021, attached as Exhibit 2 to his complaint. *See* #1-5 at 1; *see also* #1-4 at 2. The letterhead included Goldberg's and Sweeney's printed names and titles; however, the letter itself was signed: "The Massachusetts State Lottery." (#1-4 at 2.)[6] The letter states:

> The official rules for this promotion state that anyone "incarcerated (in a prison, jail, house of correction, or other penal institution) for a criminal offense or

---

[5] Plaintiff's earlier letter is not attached to his complaint.

[6] One may infer that Sweeney was the Executive Director of the MLSC in 2021. *See* #1 at 2; *see also* #1-4 at 2. The court takes judicial notice of the fact that he is no longer in that role. *See* MSLC, Lottery Commission Leadership, www.masslottery.com/about/commission (last visited July 5, 2022). The court also takes judicial notice of the fact that Goldberg is the Treasurer and Receiver General of the Commonwealth. *See* MSLC, Lottery Commission Leadership, www.masslottery.com/about/commission (last visited July 5, 2022); *see also* Office of the Treasurer and Receiver General Deborah B. Goldberg, About the Treasurer, www.masstreasury.org/about (last visited July 5, 2022).

confined in a detention center under the laws of this state, another state, or the United States" is not eligible to register for this promotion. Consequently, you are not registered for any of these drawings.

*Id*.

Plaintiff responded to the MSLC, "stating that he was not a prisoner, but was civilly committed, and is a Civil Resident, and free person, and is entitled to Register" for the five drawings and providing a copy of his civil commitment order. (#1-5 at 2.) Exhibit 3 to plaintiff's complaint is a Judgment and Order of Commitment in *Commonwealth v. Richard Vega a/k/a Ricardo Sebastian Mazzarino*, #SUCV2008-00906. (#1-4 at 3.)[7] According to that judgment and order, pursuant to Mass. Gen. Laws ch. 123A, § 14(d), plaintiff was committed to the Massachusetts Treatment Center at Bridgewater on September 11, 2008, for an indeterminate period after a jury returned a verdict finding unanimously and beyond a reasonable doubt that he was a sexually dangerous person. *Id*.

In support of dismissal for the failure to state plausible claims, defendants attach as Exhibit A to their memorandum of law the "Massachusetts VaxMillions Giveaway Official Terms and Conditions," *see* #17-1, which they proffer, *see* #17 at 3 n.5, and the court has confirmed, is a PDF that can be accessed through a link on the MSLC's website, www.masslottery.com.[8] Defendants argue that, notwithstanding the limitations on its review under Fed. R. Civ. P. 12(b)(6), the court may properly consider Exhibit A and the terms and conditions set forth in it ("the terms") because plaintiff refers to them in his complaint and they are central to his claims. (#17 at 3 n.5). Defendants also argue that the court may take judicial notice of the terms. *Id*.

---

[7] Unlike the judgment and order, this response is not attached to plaintiff's complaint.

[8] *See* MSLC, Legal Notice, www.masslottery.com/about/legal-notice (last visited July 5, 2022).

4

The court agrees that since plaintiff is alleging that MSLC's enforcement of the term prohibiting detainees from registering for, and participating in, VaxMillions violated his equal protection and due process rights, at least that term is central to his claims. In addition, plaintiff refers to that term in his complaint, albeit indirectly.

The court also agrees that it may properly take judicial notice of the contents of Exhibit A.[9] Further, the court accepts defendants' invitation, *see* #17 at 4, to judicially notice the fact that press releases including the names, hometowns, photos, and video of the first-round winners of VaxMillions and the names, hometowns, and additional information about the winners of the second, third, fourth, and fifth rounds are posted to the state website, www.Mass.gov.[10]

### III. Discussion.

#### A. Sovereign Immunity.

As noted, plaintiff is suing the MSLC and Goldberg and Sweeney in their official and individual capacities. Defendants argue that plaintiff's § 1983 claims against MSLC, as well as claims against Goldberg and Sweeney in their official capacities, should be dismissed because they

---

[9] *See Barnstable Cty. v. 3M Co.*, No. 17-cv-40002-DJC, 2017 WL 6452245, at *5 (D. Mass. Dec. 18, 2017) (and cases cited); *see, e.g.*, *Parker v. Hurley*, 514 F.3d 87, 90-91 (1st Cir. 2008) (taking judicial notice of extrinsic state curricular standards); *Schuster v. Encore Boston Harbor*, 471 F. Supp. 3d 411, 416 (D. Mass. 2020) (noting plaintiff's concession and taking judicial notice of extrinsic rules of blackjack).

[10] *See* Mass.gov, First VaxMillions Giveaway Winners Announced, www.mass.gov/news/first-vaxmillions-giveaway-winners-announced (last visited July 5, 2022); Mass.gov, Second Round of VaxMillions Giveaway Winners Announced, www.mass.gov/news/second-round-of-vaxmillions-giveaway-winners-announced (last visited July 5, 2022); Mass.gov, Third Round of VaxMillions Giveaway Winners Announced, www.mass.gov/news/third-round-of-vaxmillions-giveaway-winners-announced (last visited July 5, 2022); Mass.gov, Fourth Round of VaxMillions Giveaway Winners Announced, www.mass.gov/news/fourth-round-of-vaxmillions-giveaway-winners-announced (last visited July 5, 2022); Mass.gov, Final Round of VaxMillions Giveaway Winners Announced, www.mass.gov/news/final-round-of-vaxmillions-giveaway-winners-announced (last visited July 5, 2022).

have sovereign immunity under the Eleventh Amendment. (#17 at 4-5.) Plaintiff makes no argument to the contrary. *See* #24; *see also* #24-1 at 3 (affidavit in support of opposition).

42 U.S.C. § 1983 permits a civil action against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

The Eleventh Amendment prohibits suits against a state in federal court unless Congress has abrogated sovereign immunity, or the state has waived it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002). It is well settled that Congress did not abrogate Eleventh Amendment sovereign immunity by enacting 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). On the related issue of statutory interpretation, states are not "persons" subject to suit within the meaning of § 1983, either. *Id.* at 66-67, 71.

There is nothing to indicate here that the Commonwealth has waived Eleventh Amendment sovereign immunity, consenting to suit in federal court under § 1983. *See Divris v. Dookhan*, #20-cv-40017-TSH, --- F. Supp. 3d ---, 2022 WL 743999, at *2 (D. Mass. Mar. 11, 2022) (collecting authorities); *see generally Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (setting out "stringent" test to find waiver of sovereign immunity, including state's voluntary invocation of federal jurisdiction and clear declaration of intent to submit to federal jurisdiction).

Eleventh Amendment sovereign immunity extends to "arm[s] of the state[s]." *Wojcik*, 300 F.3d at 99. This includes state officials acting in their official capacities; absent congressional

abrogation or waiver, a state actor is protected from an "official capacity" suit for monetary damages. *Will*, 491 U.S. at 71; *see Caisse v. DuBois*, 346 F.3d 213, 218 (1st Cir. 2003).

In *Wojcik*, the First Circuit expressly held that the MSLC is an arm of the state for purposes of Eleventh Amendment sovereign immunity. 300 F.3d at 101. There is no question that Goldberg, the Treasurer and Receiver General of the Commonwealth, is a state official and that Sweeney, then Executive Director of the MSLC, was a state official and that plaintiff seeks monetary damages from both in their official capacities. *See* #1 at 4; #17 at 1.

Consistent with *Wojcik* and other cases, the § 1983 claims against the MSLC and Goldberg and Sweeney in their official capacities must be dismissed. *See, e.g.*, *Davis v. Massachusetts*, No. 14-cv-40003-TSH, 2014 WL 3965182, at *3 (D. Mass. Aug. 12, 2014) (dismissing § 1983 claims against Commonwealth, as well as claims against former Treasurer and Receiver General in his official capacity). The remaining § 1983 claims are against Goldberg and Sweeney in their individual capacities. For the reasons set out below, they must also be dismissed under Fed. R. Civ. P. 12(b)(6).

## B. Failure to State a Plausible Claim.

### 1. Standard.

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11-12 (1st Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Detailed factual allegations are unnecessary; Rule 8(a)(2) only requires sufficient detail to provide the defendants with fair notice of a plaintiff's claims and the bases for them. *Twombly*, 550 U.S. at 555.

Yet a complaint only "show[s] that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), if the factual allegations raise the entitlement to relief above a speculative level. *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, a complaint must allege enough facts to state a claim that is "plausible on its face." *Id*. at 570; *see Iqbal*, 556 U.S. at 678. A complaint "has facial plausibility" when it alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 556. This is not a "probability requirement" but demands "more than a sheer possibility that [the] defendant[s] acted unlawfully." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 556.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must separate a complaint's factual allegations from its legal conclusions. *Ocasio-Hernández*, 640 F.3d at 10; *see Iqbal*, 556 U.S. at 678. Factual allegations are entitled to a presumption of truth; legal conclusions are not. *Ocasio-Hernández*, 640 F.3d at 10; *see Iqbal*, 556 U.S. at 678. Determining whether a complaint states a facially plausible claim is a "context-specific task that requires the . . . court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see Ocasio-Hernández*, 640 F.3d at 11. If the court "can[no]t infer from the well-pleaded facts more than the mere possibility of misconduct, . . . then the complaint has not shown that the pleader is entitled to relief." *Justiniano v. Walker*, 986 F.3d 11, 19 (1st Cir. 2021) (internal citation and quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679).

As a pro se litigant, plaintiff is entitled to have his complaint liberally construed. *Ahmed*, 118 F.3d at 889. "However, while *pro se* complaints are accorded an 'extra degree of solicitude', . . . they still must 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Bobola v. F/V*

*Expectation*, 204 F. Supp. 3d 382, 387 (D. Mass. 2016) (first quoting *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir. 1991); then quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).

2. Equal Protection.

Plaintiff argues that the VaxMillions term prohibiting entry to persons "confined in a detention center" and the MSLC's refusal to allow him to register and participate violated his Fourteenth Amendment right to equal protection. (#1 at 3.)[11] Defendants contend that the VaxMillions terms are the equivalent of social or economic regulations that would pass rational basis review. (#17 at 9.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *United States v. Shields*, 522 F. Supp. 2d 317, 340 (D. Mass. 2007) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

> An equal protection claim requires "proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Freeman*, 714 F.3d at 38 (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 909-910 (1st Cir. 1995)). Regulations or restrictions that identify a class of people with certain characteristics and treat them differently than others may be subject to heightened scrutiny for purposes of an equal protection claim. *City of Cleburne*, 473 U.S. at 440. However, only classifications considered "suspect" are

---

[11] In particular, plaintiff appears to argue that his status as a civil—as opposed to criminal—detainee entitled him to register. (#1-5 at 2; #24-1 at 4.)

9

examined with heightened scrutiny. *Id.* at 440-441. Suspect classifications include religion, national origin, and alienage. *Id.* at 440; *Bruns v. Mayhew*, 750 F.3d 61, 66 (1st Cir. 2014).[12]

Regulations affecting non-suspect classifications are subject to rational basis review. *City of Cleburne*, 473 U.S. at 441-442. Under rational basis review, "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being treated alike, under like circumstances and conditions." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008) (internal quotation marks omitted). In short, the regulation in question must be "rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440.

Plaintiff objects to being treated differently compared to other vaccinated Massachusetts residents because of his status as a civil detainee. (#1-5 at 2); *see also* #1-4 at 1 ("I do not want to be disenfranchised . . . for being a [c]ivil [r]esident . . . .") The VaxMillions term specific to incarcerated individuals is not limited to criminal detainees, but sweeps in individuals "confined in a detention center under the laws of this state. . . ." (#17-1 at 4); *see* #1-5 at 1; #1-4 at 2. According to plaintiff's judgment and order of commitment, he is civilly detained as a sexually dangerous person under Mass. Gen. Laws ch. 123A, § 14(d). (#1-4 at 3.) On its face, then, the VaxMillions term does treat both civil and criminal detainees differently than other vaccinated Massachusetts residents by classifying them based on their status as detainees and barring them from registration and participation. (#17-1 at 3-4); *see* #17 at 10.

Criminal detainees are not a suspect class. *Boivin v. Black*, 225 F.3d 36, 42 (1st Cir. 2000); *Schofield v. Clarke*, 769 F. Supp. 2d 42, 48 (D. Mass. 2007). Courts in this district, along with

---

[12] Suspect classes are typically identified as "discrete and insular minorit[ies]." *Bruns*, 750 F.3d at 66 (internal quotation marks omitted) (quoting *United States v. Carolene Products*, 304 U.S. 144, 152 n.4 (1938)).

others, have likewise refused to classify civil detainees—including those found to be sexually dangerous—as a suspect class. *Shields*, 522 F. Supp. 2d at 340-341 (applying rational basis test to equal protection claim of plaintiff who was classified as a sexually dangerous person under federal law); *see Grohs v. Fratalone*, No. 13-cv-7870, 2015 WL 6122147, at *5 (D. N.J. Oct. 16, 2015) (finding that people who have been civilly committed as sexually violent predators do not make up a protected class); *Allen v. Mayberg*, No. 1:06-cv-01801-BLW-LMB, 2013 WL 3992016, at *7 (E.D. Cal. Aug. 1, 2013) (concluding that people civilly committed as sexually dangerous predators are not a suspect class for equal protection purposes). As a result, heightened scrutiny does not apply to rules and regulations aimed at people who, like plaintiff, are civilly committed for being sexually dangerous. *Shields*, 522 F. Supp. 2d at 340. Treating civilly committed people differently is thus appropriate as long as there is a rational basis for that treatment. *See Boivin*, 225 F.3d at 43-44; *see also Baldwin v. Town of W. Tisbury*, No. 16-cv-10736-ADB, 2017 WL 3940932, at *3-4 (D. Mass. Sept. 7, 2017) (conducting rational basis review at motion to dismiss stage).

      Defendants justify excluding detainees from participation by explaining that VaxMillions was a "publicity initiative that sought to incentivize unvaccinated Massachusetts residents to get the COVID-19 vaccine" and that press releases about VaxMillions winners were to be published online to promote the initiative. (#17 at 10.) They contend that the VaxMillions terms were aimed at avoiding the potential bad publicity of having a detained person "win and be the public face of the giveaway." *Id.* Defendants' claims in this regard are supported by the fact that press releases containing photos and video of some of the winners and information about all of the winners are still posted on the state website.

      "'Courts accept as adequate any plausible factual basis' that justifies the classification under rational basis scrutiny." *Callagy v. Town of Aquinnah*, 880 F. Supp. 2d 244, 252 (D. Mass.

2012) (quoting *Commonwealth of Massachusetts v. United States Dep't of Health and Human Services*, 682 F.3d 1, 9 (1st Cir. 2012)); *see also Jeneski v. City of Worcester*, 476 F.3d 14, 17 (1st Cir. 2007) (noting "the settled constitutional rule that state agencies may pursue legitimate purposes by any means having a conceivable rational relationship to those purposes" (quoting *Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052, 1054 (5th Cir. 1985) (en banc))). Pursuing a public health initiative by incentivizing vaccination is a legitimate governmental purpose. *See Massachusetts Correction Officers Federated Union v. Baker*, 567 F. Supp. 3d 315, 326 (D. Mass. 2021) (finding a COVID-19 vaccination mandate for corrections officers to be a legitimate governmental purpose). One component of the state's public health initiative was VaxMillions. (#17 at 10.) Defendants' contention—that it would have undermined the initiative through negative publicity if a detainee had won VaxMillions and had been featured online—is rationally related to the Commonwealth's legitimate interest of encouraging vaccination among residents. Thus, defendants have demonstrated a "plausible factual basis" for excluding civil detainees from participation. *See Callagy*, 880 F. Supp. 2d at 252. "[T]he Supreme Court has made it pellucid that a person who challenges the rationality of a [state action] must negate every plausible basis that conceivably might support it." *Boivin*, 225 F.3d at 44. Plaintiff has not advanced any argument sufficient to challenge defendants' basis for his exclusion from VaxMillions. *See* ##24, 24-1.

Because the VaxMillions term limiting participation by detainees passes rational basis review, plaintiff has failed to state a plausible equal protection claim. *See, e.g.*, *Collins v. Boston Pub. Health Comm'n*, No. 21-cv-10940-FDS, 2022 WL 425569, at *5 (D. Mass. Feb. 11, 2022) (dismissing a challenge to a state policy that passed rational basis review); *Brown v. Dep't of*

*Veterans Affs.*, 451 F. Supp. 2d 273, 282 (D. Mass. 2006) (granting Rule 12(b)(6) motion to dismiss because defendant articulated a rational basis for a classification).[13]

### 3. Due Process.

Plaintiff further argues that his due process rights, protected by the Fourteenth Amendment, were violated by the VaxMillions term prohibiting his registration and participation as a detainee. (#1 at 3.) Defendants respond that plaintiff failed to establish a procedural due process claim because he cannot show that a protected property interest was taken through constitutionally inadequate procedures. (#17 at 7-8.) However, plaintiff's primary complaint seems to be substantive, rather than procedural.

"As distinguished from its procedural cousin, . . . a substantive due process inquiry focuses on 'what' the government has done, as opposed to 'how and when' the government did it." *Mongeau v. City of Marlborough*, 492 F.3d 14, 18 (1st Cir. 2007) (quoting *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990)). Plaintiff's complaint primarily focuses on the prohibition on his registration for, and participation in, VaxMillions by alleging that "[defendants] denied the [p]laintiff, the *rights to register* in each of the five million dollar drawings." (#1 at 4 (emphasis added)); *see also* (#1-5 at 2 ("Plaintiff . . . *is entitled to [r]egister* for all five 1 [m]illion dollar drawings . . . .") (emphasis added)).

Traditionally, the classification of fundamental rights protected by due process are those "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Gonzalez-Fuentes v. Molina* 607 F.3d 864, 880 n.13 (1st Cir. 2010) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997)). Established fundamental rights

---

[13] Because the complaint does not plausibly allege that the MSLC's classification was based on an impermissible consideration, the court need not reach the similarly situated element of plaintiff's equal protection claim. *See Freeman*, 714 F.3d at 38.

"implicit in the concept of ordered liberty" include marriage, gun ownership, and procreation. *See Obergefell v. Hodges*, 576 U.S. 644, 675 (2015) ("[T]he right to marry is a fundamental right inherent in the liberty of the person . . . ."); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010) ("[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty."); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942) ("Marriage and procreation are fundamental to the very existence and survival of the race.")

To survive a motion to dismiss "a substantive due process cause of action, [plaintiff] must present a well-pleaded claim that a state actor deprived [him] of a recognized life, liberty, or property interest, and that [defendants] did so through conscience-shocking behavior." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 162 (1st Cir. 2008). "Substantive due process claims unanchored in fundamental rights and liberties are . . . generally disfavored." *Boston Exec. Helicopters, LLC v. Maguire*, 196 F. Supp. 3d 134, 143 (D. Mass. 2016). In other words, courts are extremely reluctant to expand substantive due process rights. *Nestor Colon Medina & Successors, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992); *Plummer v. Town of Somerset*, 601 F. Supp. 2d 358, 365 (D. Mass. 2009) ("Substantive due process claims . . . are narrowly construed.")

Plaintiff's claim depends on whether the ability to enter a state-sponsored lottery is a right protected under substantive due process. While courts have yet to determine whether entering a traditional lottery is such a right, in *Bauza v. Morales Carrion*, a related question was raised. 578 F.2d 447, 453 (1st Cir. 1978). In *Bauza*, plaintiffs challenged a state public school's decision not to use a lottery system to fill available seats. *Id.* at 452. The First Circuit observed that plaintiffs' "claim boils down to a claim of right to participate in a lottery for the limited number of available

places" and held that "we cannot conclude that a legal entitlement [to participate in a lottery] sufficient to warrant due process protection has been created. Without such an entitlement plaintiffs' cause of action must fail." *Id.* at 452–453. Like the instant claim, *Bauza* concerned an alleged right to enter a state-sponsored lottery with a potential (rather than guaranteed) benefit. *Id*.

Courts outside of this district have also declined to find a substantive due process right to participate in state-sponsored events similar in nature to the one at issue here. In *Pelletier v. Maine Principals' Association*, plaintiffs sought to have their home-schooled children participate in state-sponsored interscholastic athletics at a particular school. 261 F. Supp. 2d 10, 12 (D. Me. 2003). The court noted, however, that there is no fundamental right to athletic participation and, based on the regulations at issue, that there was correspondingly no fundamental right to participate in athletic activities at the school of one's choosing. *Id.* at 13 & n.9.

As in *Bauza* and *Pelletier*, plaintiff claims a fundamental right to participate in a state-sponsored activity. *See Bauza* 578 F.2d at 452; *Pelletier*, 261 F. Supp. 2d at 12. The court cannot find that entry into a state-sponsored lottery is a fundamental right. *See Bauza* 578 F.2d at 453; *Pelletier* 261 F. Supp. 2d at 12; *see also Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) ("[We have] always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision making in this uncharted area are scarce and open-ended."); *Boston Exec. Helicopters, LLC*, 196 F. Supp. 3d at 143. Where plaintiff cannot plausibly allege a fundamental right to participate in the Commonwealth's vaccination initiative through the MSLC's VaxMillions, plaintiff's due process claim must be dismissed. *See, e.g.*, *Christensen v. Kingston School Comm.*, 360 F. Supp. 2d 212, 219 (D. Mass. 2005) (granting motion to dismiss substantive due process claim where asserted right "d[id] not possess a significant resemblance to those interests previously viewed as fundamental by the Constitution" (quoting *Coyne v. City of*

15

*Somerville*, 770 F. Supp. 740, 747 (D. Mass. 1991)); *see also Boston Exec. Helicopters*, 196 F. Supp. 3d at 143-144 (granting motion to dismiss in part for failure to establish a substantive due process right).[14, 15]

### IV. Conclusion.

For the reasons discussed herein, defendants' motion to dismiss (#16) is ALLOWED.

July 13, 2022

/s/ M. PAGE KELLEY
M. Page Kelley
Chief United States Magistrate Judge

---

[14] The court need not address the second element of a substantive due process claim—whether the defendant's actions "shock the conscience"—because the first element has not been met. *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 880 n.13 (1st. Cir. 2010) (noting that in analyzing a substantive due process claim, where one element is not met, consideration of the other is unnecessary).

[15] Plaintiff objects to the lack of registration options for those without access to a computer or telephone. (#1-4 at 1.) However, the thrust of his due process claim is his alleged right to register in the VaxMillions giveaway. (#1 at 4; #1-5 at 2.) Having found that he has no right to register, the court will not address his allegations regarding limitations on methods of registration.